Good afternoon. Our first case this afternoon is 413-0072. For the appellant, we have Mr. Wilson, and for the appellee, we have David Manchin, and this is People of the State of Illinois v. Trayvon Lake. You may proceed, counsel. Good afternoon, Your Honors. My name is Ryan Wilson, and I represent the Appellate Department of Trayvon Lake on behalf of the Appellate Office of the State of Illinois Defender. I pledge to confide my argument to Issue 1 today, but certainly the Court has any questions regarding Issue 2, I'll address those. Trayvon filed a motion in the Supreme Court asking the Court to rule that he was unlawfully seized and suppress the fruit of that unlawful seizure, which was a handgun. During the hearing on that motion, the defense counsel had an exchange with the arresting officer, Sgt. Terry McCord. I'd like to just read a brief snippet of testimony from that hearing. During that hearing, counsel asked, and specifically, what did you suspect to have occurred? I mean, what can you articulate today about what your suspicion was? Officer McCord said, I didn't have a suspicion as to what happened. He was stopped because he was on the property, as well as the actions I observed before he was stopped. And the actions that you observed, what did you suspect him of doing? Answer, I didn't know at that point that's why he was stopped. The circuit court concluded that Trayvon was seized, and that was correct. It's easy to see why that's correct based on the facts of this case. Trayvon was walking down the sidewalk early one morning, about 1240 on a Friday. He had music playing from an electronic device out loud, and he had long hair. So he didn't see or hear Officer McCord approaching from behind. The first time that Trayvon knew that anyone was in the area was when he felt a tap on his shoulder. Trayvon was startled when he turned around. McCord, the arresting officer, even said, he appeared to be startled. Trayvon turned around, and rather than talk to Trayvon once he had turned around, McCord circled around Trayvon, came around, stood on the sidewalk in front of him, and said, what are you doing? This instructed Trayvon to continue on his way. Wouldn't it have been different if the defendant turned around and faced the officer in response to the tap on the shoulder, and the officer said the same thing? I think it would have. I think it would have been different in that situation, but then what followed as well. Well, let's just focus right, because I think in questions on motions to suppress, we have to analyze it step by step. Why is it different if the defendant, in response to the tap on the shoulder, turns around and talks to the fellow who tapped him, or the person who tapped him walks around in front of him so he doesn't have to turn around? Sure. At that point, if Trayvon had turned around and talked to the officer, he's not being confined from continuing on his way. He could look at the officer and say, hey, how are you doing, and turn around and continue on his way. In this case, though, what happened, the officer came and stood in front of Trayvon. Trayvon couldn't continue on his way unless he walked around. Well, okay. He could have, if he had been tapped on the shoulder and turned around and talked to him, turned back and ignored the officer. He could have, in the circumstances that just happened here, ignored the officer and taken one step to his left or right and walked around him, couldn't he? I don't know that that's true. Why is that less true than the first example I gave you? I'm sorry. I didn't hear the first part of that. The first part is, if the officer stayed behind him and tapped him on the shoulder and the defendant turned to look and see who it was and then said, I don't want to talk to this guy, and turned back and continued, that would have been an option you said he had. Yes. In the facts of this case, he taps him on the shoulder and walks out in front of him, so the defendant doesn't have to turn around to talk to him. And if the defendant didn't want to talk to the officer, the option of taking one step or two to the left or right and walking around him is present as well, isn't it? I mean, why is that different from the first one? Sure. I think it's different. There was a case cited in the Barista, I think goes particularly to this point, which is the Thomas case, known as the court case, where an officer was riding a parking ticket on the street and he sees a defendant... That's the same thing you're saying? No, what I'm saying is, in your scenario, you're asking why Trayvon couldn't go to the left or the right. Right. One step. In Thomas, the defendant changed his course. When he saw the police car there, he changed his course. And the officer ran into the other officers in the area and said, the defendant's taking flight. That man I want to stop is taking flight. Go and take him into custody now. And the court said, had the defendant stopped when he approached the officer's car and submitted to the officer's authority, then that would have been a seizure. But when he takes steps to avoid the officer, then that gives the officer an additional justification for effectuating that stop. And that's what I'm saying in this case. I think if Trayvon had moved to the left or the right or tried to continue on his way, I think the officer would have viewed that as an attempt to flee from what the officer's set goal was here. And so it would have just given him an additional justification to effectuate that stop. What's the matter with tapping someone on the shoulder to get their attention? That in and of itself, I don't think there's a problem with it. The question in this case is whether what followed takes that encounter from a consensual encounter to a seizure. Well, the only thing that followed of any significance is he walked around in front of them. There is an additional factor here as well, though. What is that? When the officer stepped around Trayvon and stood in front of him, he said, what are you doing? And Trayvon said three very important things. He said, I'm walking home, I live nearby, I just want to go home. This wasn't a, hey, officer, I'll talk to you. It wasn't a, hey, I'll stand here and we can talk this morning. It was, officer, I want to go home. That demonstrates that this wasn't a consensual sort of stop. This wasn't a situation where Trayvon wanted to be talking to the officer. He just wanted to go home. Was it permissible for the officer to ask his name? If it was in the terms of a consensual encounter, yes, it was. What about the fact that the Danville police have this agreement with regard to the housing authority to check on people who are on the premises of the housing authority to see if they're on the barred list? Sure. The testimony of the officer, as I recall, was he didn't recognize the defendant. He didn't know who he was. I believe he said he didn't know who he was at the time. Well, so he asked his name and then he's told Trayvon Lake, right? Yes. Now, what's the impropriety in asking his name, if any? If that was only what we were talking about here, there wouldn't be any impropriety. This would be very close to a consensual encounter where he was just asking his name. But Trayvon's position is that this went far beyond that. I should say, I want to address just very quickly your question regarding the agreement with the housing authority and the police department. It doesn't grant the police department a reason for effectuating the seizure. If he wants to walk up and say, what's your name? And Trayvon says, Trayvon Lake. And the officer wants to go and research whether Trayvon is there. But isn't it a fact that we can consider in the overarching question of the reasonableness of the officer's conduct? I think it is. But this case in Peeble v. Thompson, or this court in Peeble v. Thompson, which was a very similar case to what we have here, in fact involving the executive state officer, examined that very situation where the officer, sergeant of court, said, hold my guard between these two gentlemen because I wanted to see whether they were properly on the housing authority property. And this court examined the state, after the evidence in that case was suppressed, the state filed an appeal, so this court examined whether the officer could stop them to find out whether they were appropriately on the premises. And this court said, what happened here wasn't a consensual encounter. It wasn't a situation where he's merely going out and asking for their name. It was an actual seizure. And because it was a seizure, this court found that it didn't matter, that that was a stated justification for the stop. The fact that the court believed that pursuant to whatever the agreement was, that he could go and ask the defendant what his name was, wasn't sufficient to justify seizing. It's not sufficient to justify a seizure, but isn't a factor which demonstrates the reasonableness of asking, who are you, when they're talking face-to-face. Again, if it was just a situation of who are you, I don't think... Well, what else was it? Well, what we have is a 17-year-old at night, and you have an officer who, instead of talking to you once he's tapped you on the shoulder, walks clear around you, obstructs your path on the sidewalk, and then when you say, I just want to go home, he continues asking you questions. But the only other question he asked is, who are you? And he was told, Trevon Lake. In my position, I don't think it should have gotten to that point yet. If he wants to walk up and tap Trevon on the shoulder and say, what's your name, and Trevon wants to volunteer that information, I think that's fine. What the court can't do is effectuate a seizure, and in the process of effectuating that seizure, ask the defendant his name with the stated purpose being, I want to find out if he was on the hard list. At that point, it's gone past an essential encounter. It's outside the realm of even community caretaking. Well, if there's been no seizure prior to asking, what's your name, does asking what's your name then turn this encounter into a seizure? If there's been no seizure up until that point, no. Asking the name would not, depending on the circumstances, would not. And we're talking about a matter of seconds here anyway, aren't we? I mean, it's just the question of, where are you going? Defendant responds, what's your name? And he responds. This isn't that he's not holding him. He didn't put a hand on him. We're not talking about a lengthy conversation. Sure, but at this point, again, I think this case is very similar to the Thomas case, the bicycle. What you have when the court asks the defendant his name, we already have a seizure at that point. If, in our judgment, there isn't one at that point, do you lose? If there isn't a seizure at that point, I think it makes it very difficult for me to win. Because once the officers hold the defendant's name, based upon what he knew, according to the officer looking down, I see a bulge in his waist. Clearly, at that point, he has basis to frisk the defendant and seize the gun, does he not? Well, yes. McCord actually said that he would have frisked the defendant regardless of whether the defendant gave him his name or not. Well, but that's not, in fact, what we have in this case. No, and I understand that. What he might have done doesn't make any difference. Well, I think it plays into the whole narrative of what occurred here. You know, McCord was on the property originally after this call of shots being fired looking for suspicious activity. Is there any dispute in the record before us that McCord had heard that Trevon Link was known to carry a gun and that the defendant had a bulge in his waistband? There is no dispute in the record before us, other than the fact that he didn't include that herb. No, there's no dispute in the record before us as to those points. The defendant never testified that there was no bulge in my waistband, did he? No, he did not. He did testify? Yes, he did testify during the hearing on a motion to suppress. But, again, what we have here, at the point that McCord asks Trevon his name, a seizure has already occurred. It's very similar to the other cases, the cases that have been cited in the brief, the Thomas case, the Thompson case, where a defendant has submitted themselves to the officer's authority. There's an additional case, I think it's Peoples v. Burke in the record, that says essentially the same thing, where an officer walks by some men and he questions them from the street and eventually they become in custody of the officer one way or another and they contest their seizure. And the court says, well, had they submitted to the officer's improper conduct, then, yes, they would have been unlawfully deceased, but they didn't do that here. Here, Trevon submitted to the officer. When this officer walks around Trevon, not content with just patting him on the shoulder and having a friendly conversation with him and seeing whether Trevon would volunteer his name at that point, this officer circles completely around Trevon, stands in his way, doesn't move when Trevon says, I live nearby, I just want to walk home, which is true. Trevon lived at 917 Redmond Court. He stopped in the 900 block at Redmond Court. He was arguably just steps from where he lived. And here's this officer who's standing in his way, not allowing him to continue, this 17-year-old in the middle of the night, and Trevon submits to that officer's authority. That's why there was a seizure that was effectuated here. And I should say the circuit court said that there was a seizure as well. The circuit court immediately said that there was reasonable suspicion for that seizure. The court got that part of the analysis wrong. The court essentially said that there was reasonable suspicion for the seizure based on the latency of the hearing. Well, we review judgments, not reasons. Sure, and I understand that. I just know that in looking at the totality of what occurred here, I want to make clear that the reasoning that the circuit court gave was not sufficient to justify a finding of reasonable suspicion. There has to be a finding that the police officer has to be able to point to something specific and articulable facts that, taken together with rational inferences therefrom, reasonably warrant the intrusion. The officer has to believe that there is a reasonable suspicion that a private citizen is involved in criminal activity. And in fact, during the hearing on the motion to suppress, when the defense counsel was questioning the officer, the officer said, no, I didn't see anything illegal happen when Trevon was with the two other men. I didn't witness any crimes occur. He said, I got out of my car and I was walking around the housing complex looking for suspicious activity. And as the quote that I read at the outset of the argument illustrates, Sergeant McCourt couldn't even enunciate a reason for detaining Trevon. He didn't know, what was it? He didn't know at that point that's why he was stopped. He had no idea why he was stopped, why he was seeking Trevon. This isn't something that's constitutionally permissible. Well, it's a consensual encounter. You don't need any grounds, do you? I didn't hear the last part of that. You don't need any articulable suspicion or other grounds other than just curiosity? If it's a consensual encounter, I would agree. I don't believe that where a person says, I just want to go home to the officer. That's after the encounter began. You're arguing about the lack of basis for the officer to begin the encounter at first. I think that the encounter… If it's a consensual encounter, the officer doesn't need anything at all. Correct. I think the gravity of the encounter, the nature of the encounter changes. Again, if we're solely talking about a tap on the shoulder, and Trevon needs to turn around and converse with the officer, that would be your very typical consensual encounter. Essentially, then, your argument is that what changed it all is walking around to the front, as opposed to just standing where he was behind him? It wasn't simply that he walked around to the front. It was that he stood there obstructing Trevon's ability to continue on his way. And then, again, when Trevon says, I just want to go home, which is arguably steps from where they are, the officer doesn't yield his right foot on the sidewalk. He doesn't tell Trevon, okay, have a nice night, go on. The officer's motives here were simply to question Trevon, it appears, no matter what. Trevon could have said, I don't want to… well, I don't want to go that far. But certainly Trevon, in his testimony during the motions to press, said he didn't feel free to leave. He believed that he was seized and that he had to stay there and talk to the officer. This isn't a consensual encounter. This is a seizure at this point, and there is no reasonable suspicion for that seizure. Again, this case is very similar to the Peeble v. Thompson case that, again, involved Sgt. McCord. It's also very similar to the Peeble v. Thomas case, regarding the bicycle and the officer who parked his car on the sidewalk. Had Trevon stepped to the left or to the right, given how this whole encounter occurred from the moment that Sgt. McCord walked onto the housing property looking for suspicious activity, arguably there wouldn't be much that Trevon could have done to dispel any suspicion that the officer had before the officer found some reason to frisk him, as is what happened here. The mere fact that this was a seizure that is not supported by sufficient articulable suspicion renders the circuit court's judgment rejecting Trevon's motion to suppress something that needs to be reversed. So we would ask that this court reverse the circuit court's denial of the motion to suppress this case. Thank you. Thank you. Thank you. In this case, there was absolutely no seizure. I think you hit it right on the head, Justice Feiglin. It doesn't matter whether the officer stands behind him or walks around in front of him. Any quote-unquote obstruction to the defendant is exactly the same. And testiglia, which is another way to read the court's statement, was the officer's action was something significantly beyond that extent of social interference. If it was not a police officer that came up to you behind you and tapped your head and came around in front of you, would anybody think anything of it? Not at all. So it makes no difference that the officer taps you on the shoulder and walks in front of you and you stand behind him to turn around and face him. The stoppage or obstruction or however you want to phrase it is exactly the same whether the officer stays behind the defendant or walks in front of him. This is not pulling a car across the path of a moving vehicle or a moving bicycle so that the bicycle either has to stop or run into the car. What about Mr. Wilson's argument concerning the first response of the defendant that, I just want to go home, I live nearby or whatever? The defendant's claim is that the seizure had already taken place before that was ever made, before that was ever said. The moment the officer tapped him on the shoulder and walked in front of him, he was seized. Before anything is said, before anything else. So it doesn't matter if the defendant says, hey, I want to go home. But again, this is a matter of seconds. You're not having the officer holding the defendant there for 15 minutes after he says, I want to go home, calling in to say, is this guy on the bar list, does he live here, anything like that. It's all within a matter of a few seconds that this develops. To say that the officer has to immediately step aside when the defendant says, I want to go home, when he recognizes the name, recognizes that this guy has no material gun, and recognizes an object in his belt that could be a gun. I don't think the officer is required to step aside at that point because at that point, inquire about that bonus. Because the whole, the defendant's whole argument is that at the moment the officer walks up to him, taps him on the shoulder, everything beyond that point is invalid. Because I have been seized, stopped, my rights have been violated as of that moment, and that's it. But if you accept the premise that walking up to him, tapping him on the shoulder, and saying, hey, what you doing, what's your name, you're not seized, that's something any person can do. The case law is clear that the police do not need a reason to walk up to somebody on the street and say, hey, how you doing, or ask any questions. That is all that was done here. And walking around in front, again, as you pointed out just a second ago, that there is no inherent seizure in that thing. It's no different than when the officer is standing behind you and asking you. The defendant's freedom to leave or ability to leave is the same when the officer is behind you or standing in front of you. And if the defendant turns around completely to face him, again, you're in the same position. His pathway is now blocked. Whether the officer walks in front of him or the defendant turns around to face him, his pathway has been blocked, as you can see. So that's the whole argument, is that his pathway has been blocked by the officer's actions. And his pathway is blocked whether the officer stands behind him and the defendant turns around and walks around in front of him. That is simply not a seizure under the facts of this case. And as far as the defendant's state of mind or that he didn't feel like he could leave, the test for whether it is a subjective one would be an objective evaluation of police conduct, not a subjective view of the person involved. That's the test. And an objective view of this circumstance, somebody walking up, a police officer walking up to him and speaking, saying, hey, how you doing, what's your name, is simply not a seizure. So I submit that the trial court's decision is correct, but the judgment below should be heard. Thank you, counsel. Any other questions? Thank you. Any rebuttal? Just a couple of very quick points. The statement earlier that Trayvon was able to leave was the same whether the officer was standing in front of him or behind him. Trayvon was walking home. He was walking in a single direction on his way home. If the officer is standing behind him, he is still free to continue walking. You can disregard his interaction with that officer. Well, if he had stopped and apparently did talk to him, I think Mr. Manchin's point is he's now turned around to talk to the guy behind him. Sure. And if he wants to stop that conversation, he's got to turn back around the other way and continue where he was going. Is that significantly different than having to take a step to the right or the left and walk around the guy who stopped him? I believe it is because, again, he's not heading behind him. Trayvon's not trying to walk behind him. If the officer is standing behind him, Trayvon is free to speak with that officer and say, hey, how are you doing, and just turn around and continue walking home where he wants to go. But in this case where the officer circles around him and stands in front of him on the sidewalk… Can it really be said that the difference between these two examples reaches a constitutional significance where in the first he's not seized and in the second he is? I think it can. It's the question of what if in the Thomas case, the case with the bicycle, if the officer had pulled his car in behind the defendant's bicycle, the defendant had already passed him on the sidewalk, the officer pulls his car in behind the defendant, there wouldn't be a seizure there. The defendant can continue on his way if he wants or he can stop and turn around and talk to the officer. In Thomas, the critical fact was that the officer parked his bicycle in front of the defendant. Therefore, the defendant's path was blocked. The Castilia case that Mr. Manchin cited quoted Professor Lefebvre's treatise saying that an encounter between a police officer and a civilian is a seizure only if the officer adds to those inherent pressures by engaging in conduct significantly beyond that accepted in social discourse. Sure. So the walking around is conduct that's significantly beyond that accepted in social discourse? When you're talking about the distinction between a consensual encounter and a seizure, yes, I believe it is. When you have an officer, again, one thing that the state said as well, you made the distinction between whether Trayvon was there for seconds or minutes. And we're not talking about that. What we're talking about is, at some point, did what occurred move from a consensual encounter to a seizure? And the movement of McCord from behind the defendant, where the defendant was free to continue on his way, around to the front of the defendant, where he couldn't continue on his way unless he walks through or around McCord, and then telling McCord, I'm going to go home. And McCord testifies, the defendant freely testifies, the defendant told him that. That transferred what occurred there between a consensual encounter, a tap on the shoulder, to a seizure where the defendant did not believe that he was free to go on his way. So it really doesn't matter if it is a matter of seconds or if it's minutes. What we're talking here is a distinction between, or what we're talking about here is, when does that consensual encounter move to a seizure? And it could be the slightest change in the way that that encounter was conducted transfers it between those two. And in this case, it transferred it when the officer walked around Trayvon, stood in front of him, said, what are you doing? Trayvon said, I just want to go home. And the officer did not move out of his way, did not allow him to continue on, just like what happened in the Thomas case. And I'd just like to note, as well, the state is arguing exclusively that there was no seizure here. They don't set forth any reasonable or articulable suspicion that is present in this record that it is a seizure to justify the seizure itself. Good for them for not doing that. Excuse me? Good for them for not doing that. Well, good for them, for us, because it is a seizure. Well, I think arguing grounds for a seizure is not, on this record, a sound argument to make. And I always appreciate it when parties don't make unsound arguments. Sure. And I can appreciate that, as well. So we would ask that Trayvon's accusation be reviewed. Thank you. Thank you. We'll take this matter under advisement and be in recess until the next case.